```
                        UNITED STATES DISTRICT COURT
                        SOUTHERN DISTRICT OF FLORIDA

                        CASE NO. 08-14030-Civ-MOORE
                                (06-14069-Cr-MOORE)
                        MAGISTRATE JUDGE P. A. WHITE

ERIC MARTIN MATTHEWS,      :

        Movant,            :

v.                         :          REPORT OF
                                    MAGISTRATE JUDGE
UNITED STATES OF AMERICA   :

        Respondent.        :
_____
```

## Introduction

This matter is before this Court on the movant's motion to vacate pursuant to 28 U.S.C. §2255, attacking his sentences for use of a facility and means of interstate commerce to persuade, induce, entice, and coerce a minor to engage in sexual activity and distribution of child pornography entered following a guilty plea in case no. 06-14069-Cr-Moore.

The Court has reviewed the motion with supporting memorandum, the government's response with multiple exhibits, the movant's reply, the Presentence Investigation Report (PSI), and all pertinent portions of the underlying criminal file.

Construing the movant's arguments liberally as afforded *pro se* litigants pursuant to Haines v. Kerner, 404 U.S. 419 (1972), the movant appears to raise the following claims:

> 1.  He was denied effective assistance of counsel, where his lawyer failed to seek a variance in his sentence pursuant to 18 U.S.C. §3553(a)(6) in order to avoid an

>       unwarranted sentencing disparity between
>       himself as compared to those similarly
>       situated defendants nationwide who
>       received lesser sentences for the same
>       offenses. (Cv-DE#2:3-4).
>
>    2. The facts used to support the
>       enhancements to his base offense level
>       for pattern of behavior and for quantity
>       of pictures was never admitted by the
>       movant. (CvDE#12:4).

It should be noted that claim two, as listed above, could have been, but was not raised on direct appeal. Notwithstanding, construing the argument made by the movant in support thereof, he appears to argue that counsel was ineffective for failing to pursue the claim either at sentencing or on direct appeal. A claim of ineffective assistance of counsel may constitute cause for failure to previously raise the issue. United States v. Breckenridge, 93 F.3d 132 (4 Cir. 1996). Attorney error, however, does not constitute cause for a procedural default unless it rises to the level of ineffective assistance of counsel under the test enunciated in Strickland v. Washington, 466 U.S. 668 (1984); Murray v. Carrier, 477 U.S. 478, 488 (1986). Thus, each claim identified above will therefore be identified and treated in turn in this Report, *infra*.

Procedural History

The procedural history of the underlying criminal case reveals that the movant was charged by Indictment with use of a computer to attempt to entice a minor to engage in sexual activity, in violation of 18 U.S.C. §2422(b) (Count 1), two counts of using a computer to transfer obscene material, in violation of 18 U.S.C. §1470 (Counts 2-3), distribution of child pornography via a computer, in violation of 18 U.S.C. §2522(a)(2) (Count 4), as well

as, a forfeiture count. (Cr-DE#10).

Pursuant to the terms of a written plea agreement, the movant agreed to plead guilty to Counts One and Four of the Indictment. (Cr-DE#23). The movant further agreed that the sentence would be imposed after the court considered an advisory guideline sentence, relying in part on the results of a PSI, and acknowledged that the court could depart from the guideline range. (Id.:1-2). The movant acknowledged that the court was required to consider the advisory guideline range, but was not bound to impose that sentence, and in fact, was permitted to tailor the sentence in light of other statutory concerns, which could result in a sentence that is more or less severe than the advisory guideline sentence. (Id.:2). The movant also acknowledged that the court must impose a minimum of 5 years and may impose a maximum of up to 30 years in prison as to Count 1, and a minimum of 5 years and up to a maximum of 20 years in prison as to Count 4. (Id.:3). The movant further agreed that the court could impose up to life of supervised release, a maximum fine of $250,000.00, and a $200.00 special assessment. (Id.). The movant further agreed to forfeit his Gateway computer and GE EasyCam. (Id.:3-4).

In exchange, the government agreed to dismiss all remaining counts after sentencing, and to recommend up to a three level reduction in the movant's base offense level based on his timely acceptance of responsibility. (Id.:1,4).

Prior to sentencing, a PSI was prepared which reveals as follows. Pursuant to U.S.S.G. §3D1.2(c), Counts 1 and 4 are grouped together because Count 1 embodies conduct that is treated as a specific offense characteristic in the guideline applicable to Count 4. (PSI ¶19). When cases are group together pursuant to

U.S.S.G. §3D1.2(c), the offense level applicable to the group is the offense level for the most serious of the offenses. (Id.). The probation officer determined that, pursuant to U.S.S.G. §2G2.2, Count 4 results in the highest offense level and was therefore used to compute the movant's guideline range. (Id.). The guideline for violating 18 U.S.C. §2242(b) as charged in Count 4 is U.S.S.G. §2G2.2, which provides an initial base offense level 22. (PSI ¶20).

Seven levels were then added, pursuant to U.S.S.G. §2G2.2(b)(3)(E), because the offense involved the "distribution to a minor that was intended to persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct." (PSI ¶21). An additional four levels were added pursuant to U.S.S.G. §2G2.2(b)(4) because the offense involved material that portrayed sadistic or masochistic conduct or other depictions of violence. Five levels were also added, pursuant to U.S.S.G§2G2.2(b)(5), because the "defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." A total of four more levels were added, pursuant to U.S.S.G. §§2G2.2(b)(6)-(7), because "the offense involved the use of a computer or an interactive computer service for the possession, transmissions, receipt, or distribution" of "ten but not more than 150 images." (PSI ¶¶24-25). Three levels were then deducted based on the movant's acceptance of responsibility, which resulted in a total adjusted offense level 39. (PSI ¶31-33).

The probation officer also determined that the movant had zero criminal history points, resulting in a criminal history category I. (PSI ¶34-37). The probation officer indicated that, based on a total offense level 39 and a criminal history category I, the movant's advisory guideline range was 262 to 327 months in prison. (PSI ¶63).

The movant thereafter filed *pro se* motions to withdraw his guilty plea, dismiss counsel, and to proceed *pro se* until new counsel was appointed. (Cr-DE#s34-36). Movant's counsel filed a motion for a status conference after visiting the movant at local detention center, at which time he learned that the movant had filed the subject pleadings. (Cr-DE#33). After an evidentiary hearing, a Report was entered denying the motions based on the fact that the movant understood he faced more time if he proceeded to trial, and therefore was tacitly withdrawing the motions. (Cr-DE#47).

On March 8, 2007, the movant was sentenced to a term of 262 months in prison as to Count 1, and a concurrent term of 240 months in prison as to Count 4, followed by a term of life supervised release. (Cr-DE#53). The judgment was entered by the Clerk on March 9, 2007. (<u>Id</u>.). No direct appeal was filed. Thus, the judgment of conviction in the underlying criminal case became final at the latest on March 23, 2007, when time expired for filing a notice of appeal, ten days following the entry of judgment.[1] This motion to vacate was timely filed less than one year later on January 5, 2007.[2]  (Cv-DE#1).

---

[1] Where, as here, a defendant does not pursue a direct appeal, the conviction becomes final when the time for filing a direct appeal expires. <u>Adams v. United States</u>, 173 F.3d 1339, 1342 n.2 (11th Cir. 1999). The time for filing a direct appeal expires ten days after the judgment or order being appealed is entered. <u>Fed.R.App.P.</u> 4(b)(1)(A)(I). The judgment is "entered" when it is entered on the docket by the Clerk of Court. <u>Fed.R.App.P.</u> 4(b)(6). On December 1, 2002, <u>Fed.R.App.P.</u> 26 which contains the rules on computing and extending time, was amended so that intermediate weekends and holidays are excluded from the time computation for all pleadings due in less than 11 days.

[2] The movant signed the motion and dated it in January 2007, prior to imposition of sentence in the underlying criminal case. (Cv-DE#1). <u>See</u>: <u>Adams v. U.S.</u>, 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing). Although it appears from the handwritten date that it was filed in January 2007, this may, in fact, be a scrivenor's error as it was not received by the Clerk until January 2008. Regardless, utilizing either 2007 or 2008 for the filing date makes no difference as the motion is timely filed.

## Discussion of Claim

As noted above, the movant raises multiple claims, each of which will be individually identified and treated in turn in this Report. In order to prevail on a claim of ineffective assistance of counsel, the movant must establish: (1) deficient performance - that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice - but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984); Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000)(*en banc*). The standard is the same for claims of ineffective assistance on appeal. Matire v. Wainwright, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. Id. at 697; Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995). Prejudice in the sentencing context requires a showing that the sentence was increased due to counsel's error. Glover v. United States, 531 U.S. 198, 203-204 (2001).

In the context of a case in which guilty pleas or the equivalent were entered, application of the second prong of the two-prong Strickland standard requires a showing that there is a reasonable probability that but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52 (1985). No such showing has been made here.

Moreover, review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not

permitted. White v. Singletary, 972 F.2d 1218, 1220 ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11 Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.2d 384, 386 (11 Cir. 1994).

In **claim one**, the movant asserts that he was denied effective assistance of counsel, where his lawyer failed to seek a variance in his sentence pursuant to 18 U.S.C. §3553(a)(6) in order to avoid an unwarranted sentencing disparity between himself as compared to those similarly situated defendants nationwide who received lesser sentences for the same offenses. (Cv-DE#2:3-4).

After United States v. Booker, 543 U.S. 220 (2005), a district court determining a reasonable sentence must consider the correctly calculated sentencing range under the Sentencing Guidelines, as well as, the factors set forth in 18 U.S.C. §3553(a). United States v. Talley, 431 F.3d 784, 786 (11th Cir.2005) (per curiam). A party challenging a sentence bears the burden of establishing that a sentence is unreasonable in light of both the record and the §3553(a) factors. United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).

In determining whether a sentence is reasonable, the court is guided by the factors outlined in §3553(a), as well as, the district court's reasons for imposing the particular sentence. United States v. Williams, 456 F.3d 1353, 1360-61 (11th Cir.2006). The factors set forth in §3553(a) include: (1) the nature and circumstances of the offense and the history and characteristics of

the defendant; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct; (4) the need to protect the public from further crimes of the defendant; (5) the need to provide the defendant with needed training or medical care; (6) the kinds of sentences available; (7) the sentencing guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentence disparities; and (10) the need to provide restitution to victims. See 18 U.S.C. §3553(a)(1)-(7).

"Although sentencing courts must be guided by these factors, nothing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the §3553(a) factors" or to discuss each of them. United States v. Thomas, 446 F.3d 1348, 1357 (11th Cir. 2006) (internal quotation marks and citation omitted); United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005). Instead, "an acknowledgment by the district judge that he or she has considered the §3553(a) factors will suffice." United States v. Amedeo, 487 F.3d 823, 833 (11th Cir. 2007).

It is also significant that the Eleventh Court has previously recognized that the Sentencing Guidelines were structured to account for relative culpability and differences in prior records of defendants, and fully anticipated sentencing disparity between defendants involved in the same offense. See: United States v. Smith, 289 F.3d 696, 714-715 (11th Cir. 2002), United States v. Requiero, 240 F.3d 1321, 1326 (11th Cir. 2001), citing, United States v. Chotas, 968 F.2d 1193, 1998 (11th Cir. 1992). Therefore, "[T]o adjust the sentence of a co-defendant in order to cure an

apparently unjustified disparity between defendants in an individual case will simply create another, wholly unwarranted disparity between the defendant receiving the adjustment and all similar offenders in other cases." United States v. Chotas, 968 F.2d at 1198. A defendant also cannot rely upon a codefendant's sentence as a yardstick for his own. United States v. Hayes, 589 F.2d 811, 827 (5th Cir. 1979), cert. den'd, 444 U.S. 847 (1979). The Eleventh Circuit has also held that challenges to sentencing merely because a codefendant received a less severe penalty are frivolous, and provide no basis for disturbing the complaining petitioner's sentence. U.S. v. Hendreith, 922 F.2d 748, 752 (11th Cir. 1991); U.S. v. Bushert, 997 F.2d 1343, 1355 (11th Cir. 1993).

Here, the district court imposed a reasonable sentence because it considered the statutory factors, as well as, the parties' arguments and the PSI when it correctly applied the Guidelines. United States v. Crawford, 407 F.3d 1174 , 11789-1179 (11th Cir. 2005). The court sentenced the movant at the lowest end of the Guideline range, and the statutory maximum was 360 months as to Count 1. The movant has not shown that his sentence as compared with other defendants nationwide are similar enough that the difference between their sentence is unwarranted. The lists provided by the movant reveal that similarly situated codefendants nationwide were sentenced to terms of imprisonment ranging from 18 months to life in prison. The movant does not identify how the courts in each of the listed cases arrived at the sentence imposed, nor how each defendant's specific offense characteristics, sentencing enhancements, criminal histories, and the like were similarly situated to the movant. Likewise, no showing has been made in this collateral proceeding that the movant's sentence, which was a low end guideline sentence, was unreasonable. Even if counsel had requested a variance in sentence for the reasons

proffered by the movant in this collateral proceeding, no showing has been made that such a request would have been granted. Thus, the movant has failed to establish prejudice pursuant to Strickland arising from counsel's failure to pursue this claim.

Finally, counsel's strategic decision to argue for a low end guideline sentence, rather than a variance in sentence should not be second-guessed in this collateral proceeding. Arguably, given the significant range of sentences imposed post-Booker on similarly situated defendants throughout the country, it is possible that presenting such an argument could have adversely impacted the movant and resulted in an advisory guideline sentence more severe than that imposed herein. It is well settled under federal law that tactical or strategic choices cannot support a collateral claim of ineffective assistance. McNeal v. Wainwright, 722 F.2d 674 (11 Cir., 1984); United States v. Costa, 691 F.2d 1358 (11 Cir. 1982); see e.g., United States v. Swanson, 943 F.2d 1070, 1075-76 (9 Cir. 1991)("In some cases a trial attorney may find it advantageous to his clients' interests to concede certain elements of an offense or his guilt of one of certain charges."); United States v. Simone, 931 F.2d 1186 (7 Cir. 1991)(admission that defendant was drug dealer in combination with vigorous defense of more serious charge recognized as "logical" and not ineffective assistance where inculpating evidence was undisputed). Under these circumstances, no prejudice has been established pursuant to Strickland, supra arising from counsel's failure to pursue this issue.

In **claim two**, the movant asserts that the facts used to support the seven level enhancement to his base offense level for pattern of behavior and for quantity of pictures which he claims was never admitted by him as part of the plea proceedings. (CvDE#12:4).

Review of the PSI reveals that five levels were added to the movant's base offense level, pursuant to U.S.S.G. §2G2.2(b)(5), because the government's investigation revealed that the movant had previously engaged in a pattern of activity involving the sexual abuse or exploitation of a minor.[3] (PSI ¶23). "'Pattern of activity involving the sexual abuse or exploitation of a minor' means any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; (C) resulted in a conviction for such conduct." See U.S.S.G. §2G2.2, App. n.1. A "pattern of activity" may include acts of sexual abuse or exploitation committed before the charged offense. United States v. Ashley, 342 F.3d 850, 852 (8th Cir. 2003) (citing United States v. Anderton, 136 F.3d 747, 750 (11th Cir. 1998)). The conduct considered for the enhancement "'is broader than the scope of relevant conduct typically considered under § 1B1.3.'" Id. (quoting U.S. Sentencing Comm'n Guidelines Manual, App. C, at 373).

Review of the PSI, in conjunction with the stipulated facts[4] from the change of plea hearing, amply supports the five level

---

[3] For purposes of the Guidelines, a "minor" means "(A) an individual who had not attained the age of 18 years; (B) an individual whether fictitious or not, who a law enforcement officer represented to a participant (i) had not attained the age of 18 years, and (ii) could be provided for the purposes of engaging in sexually explicit conduct; or (C) an undercover law enforcement officer who represented to a participant that the officer had not attained the age of 18 years." U.S.S.G. §2G2.2, App. n.1.

[4] The factual basis for the plea as proffered by the government was accepted by the movant at the December 4, 2006, change of plea hearing. See Cr-DE#49:17-12. The law is clear that "solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988). The subsequent presentation of conclusory allegations, unsupported by specifics, is subject to summary dismissal, as are contentions which in the face of the record are wholly incredible. Machibroda v. United States, supra.

enhancement, which reveals as follows. In September 2006, Agent Brian Ray was conducting an on-line child exploitation investigation in a bisexual Yahoo chat room named "Bothways.ten." (Cr-DE#49:7-8). The movant, using a profile name "MERFJR2003," contacted Ray's undercover female profile "Lori." (Id.). The movant then inquired by written text her age, to which she responded that she was 13, and he indicated he was 27. (Id.). A conversation ensued both by text and voice chat, during which the movant took off his underwear, exposing his penis on the Web camera, and asking Lori whether she "wanted" him. (Id.:8-10). Explicit text communications ensued wherein the movant asked Lori if he could lick her in exchange for her sucking him. (Id.). Also during their conversation, the movant advised Lori that he previously had sexual intercourse with a 14-year old, whose virginity he'd taken. (Id.:11). The movant eased Lori's concerns about getting pregnant, explaining that having intercourse at the proper time during her menstrual cycle would prevent her from getting pregnant. (Id.). The movant also transmitted to Lori an image of a prepubescent female with her legs spread open towards a camera, during which she exposed her vagina, asking Lori to compare her breasts to that of the girl depicted in the image. (Id.).

Eventually, the movant agreed to meet with Lori in Port St. Lucie on September 29, 2006 in order to engage in vaginal intercourse with her. (Id.). Surveillance was established on that date at which time agents observed the movant arrive at the predetermined location. At that time, he was taken into custody, and after being advised of and waiving his constitutional rights, he admitted to being the individual who agreed to meet with Lori, and who previously sent Lori images from his computer. (Id.:11-12). The movant further admitted that in the past, he had sexually explicit on-line chats with hundreds of children, and sex with

another 14-year old girl. (<u>Id</u>.).

Moreover, the PSI further established that analysis of the movant's computer, seized after a search warrant was executed at the movant residence, revealed that between April 2006 and September 2006, the movant was involved in numerous written conversations with Nikki, a 13-year old female. (PSI ¶¶13-14). These conversations reveal that the movant had both oral and vaginal sex with the minor, transmitted numerous images of nude minors to Nikki, stayed with Nikki at a hotel room on at least one occasion, and gave her gifts of jewelry and money. (<u>Id</u>.). Eventually, Nikki was interviewed by Agent Ray, at which time she confirmed that she had vaginal intercourse with the movant during at least three occasions, and that she eventually ended the relationship because of their age difference. (<u>Id</u>.). Nikki confirmed that during their relationship, the movant transmitted numerous images of young, nude females. (<u>Id</u>.). The government maintains that a total of 34 images of child pornography were involved in this case. (<u>Id</u>.).

On the record before this court, it is clear that the movant's chats involved minors, relied on the representations of "Lori" that she was 13 years old, and had sexual intercourse in the past with another minor, Nikki. Therefore, the enhancement under U.S.S.G. §2G2.2(b)(5) was proper. Under these circumstances, no deficient performance or prejudice has been established arising from counsel's failure to pursue this nonmeritorious claim.

The movant next claims that he never agreed to the two level enhancement in his base offense level, pursuant to U.S.S.G. §2G2.2(b)(7), because the offense of conviction involved at least 1 but less than 150 visual images/depictions of child pornography.

(PSI ¶25; U.S.S.G. §2G2.2, App. n.4). By the movant's own admission as part of his acceptance of responsibility, the movant admitted that he sent Lori "some pictures," which clearly reveals that he transmitted at least more than one image of child pornography. Moreover, the stipulated facts at the change of plea proceeding also indicate that the movant provided Lori with at least one image of a prepubescent female exposing her vagina. Thus, the enhancement was proper, and no showing has been made that counsel was either deficient or that the movant suffered prejudice arising from counsel's failure to object to the two level enhancement. He is thus entitled to no relief on this claim.

Finally, the movant's request for an evidentiary hearing on his claims of ineffective assistance of counsel should be denied. A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations or affirmatively contradicted by the record. See Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989), citing, Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979). As previously discussed in this Report, the claims raised are unsupported by the record or without merit. Consequently, no evidentiary hearing is required.

## Conclusion

It is therefore recommended that this motion to vacate sentence be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 25th day of July, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

```
cc:   Eric Martin Matthews, Pro Se
      Reg. No. 75804-004
      F.C.I.
      P.O. Box 9000
      Seagoville, TX 75159-9000

      Diana M. Acosta, AUSA
      United States Attorney's Office
      505 S. Second Street, Suite 200
      Fort Pierce, FL 34950
```